UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

_____

IN RE:
JUDITH MCMULLEN,                                            Chapter 13
         DEBTOR                                           Case No. 00-10151-WCH
_____

**MEMORANDUM OF DECISION**

**I. INTRODUCTION**

      The matter before the Court is the Motion to Compel Gordon Schultz to Return Addison Russell's Funds and Determine Contempt for Violating a Court Order (the "Motion for Contempt") filed by Judith McMullen (the "Debtor") and her father, Addison Russell, (the "Moving Parties") and the Opposition of Gordon N. Schultz D/B/A Schultz & Company to [the Motion for Contempt] and Request for Costs (the "Contempt Opposition") filed by Gordon N. Schultz, d/b/a Schultz & Company (collectively, "Schultz").  Through the Motion for Contempt, the Debtor and her father seek an order holding Schultz, the Debtor's former bankruptcy counsel in contempt for pursuing a collection action in the state courts against Addison Russell for attorney's fees incurred in the Debtor's bankruptcy case in contravention of my prior order holding that the Debtor is solely liable for her attorney's fees.  Schultz opposes such an order, asserting that I expressly authorized him to withdraw said funds and as such, asks that I award him costs.  For the reasons set forth below, I will abstain from the matter.

## II. BACKGROUND

The history of this case is long and complex, and as such, the findings of fact and conclusions of law set forth in my prior decisions are incorporated herein by reference.[1] The facts relevant to the Motion for Contempt can be summarized as follows.

The Debtor originally filed a voluntary Chapter 7 petition on January 10, 2000, but retained Schultz in April, 2000, to convert her case to Chapter 13. At that time, Schultz filed a Statement of Attorney for Debtor Pursuant to Bankruptcy Rule 2016(b) (the "2016(b) Statement") indicating that the Debtor's parents, Addison and Louise M. Russell (collectively, the "Russells"), agreed to pay Schultz's fees and costs on the Debtor's behalf and would be the only source of payments made to Schultz. Although the details on this point are not entirely clear, it is undisputed that at some point prior to my decision in *McMullen II*, Schultz also represented one or both of the Russells in several proceedings in the state courts.

On June 26, 2003, Schultz filed his first interim fee application (the "First Fee Application") seeking payment of fees incurred to that date from funds recovered by the Debtor pursuant to two settlement agreements. Shortly thereafter, he filed an amendment to the original fee agreement (the "Amendment") which jointly and severally obligated the Debtor for the counsel fees and costs incurred in this case. Initially, the Debtor supported the First Fee Application, as evidenced by an affidavit (the "Affidavit") stating that she assented to the payment of the fees requested and wished

---

[1] *See In re McMullen*, No. 00-10151-WCH, 2009 WL 1615526 (Bankr. D. Mass. June 8, 2009) ("*McMullen IV*"); *In re McMullen*, No. 00-10151-WCH, 2009 WL 1490581 (Bankr. D. Mass. May 27, 2009) ("*McMullen III*"); *In re McMullen*, No. 00-10151-WCH, 2009 WL 530296 (Bankr. D. Mass. Feb. 18, 2009) ("*McMullen II*"). With the exception of the term "Fee Decision" used in *McMullen II*, which for the purpose of clarity will now be referred to as "*McMullen I*," identified terms in *McMullen II*, *McMullen III*, and *McMullen IV* shall retain the same meaning herein.

to be the primary obligor, but later, acting *pro se*, filed a lengthy letter (the "Letter") requesting an investigation of her case in light of the substantial fees sought by Schultz and the underwhelming results achieved to that point. The Debtor also indicated that Addison Russell gave Schultz a mortgage on his home (the "Mortgage") and that she signed the Amendment and fee application[2] believing that Schultz would release her parents, but that he later refused to do so.

In light of the Letter and other objections filed to the First Fee Application, I took the matter under advisement. On August 19, 2004, I issued a three-page Memorandum of Decision Regarding Applications for Compensation ("*McMullen I*") in which I stated that I understood the Amendment and the Affidavit to effectively amend the 2016(b) Statement, but misconstrued the import of these documents to reflect that the Russells were no longer liable for Schultz's fees and expenses in this case and noted that any security interest or lien which Schultz may have had was ineffective as there was no longer an underlying obligation.[3] Despite my patent misapprehension as to the effect of the Amendment, Schultz took no action to correct the record, seek reconsideration of my findings, or otherwise clarify or supplement his prior disclosure.

As the case continued, the relationship between the Debtor and Schultz became increasingly acrimonious due in large part to Schultz's fees. After the resolution of a particularly convoluted claims process that spanned nearly eight years, Schultz filed a final fee application (the "Final Fee Application") on July 10, 2008, to which the Debtor subsequently objected. I ultimately approved the Final Fee Application in substantial part in *McMullen II*, but declined to enter a final order on Schultz's fees until he filed a supplemental disclosure of attorney compensation as required by Fed.

---

[2] I presume that the Debtor meant the Affidavit.

[3] *McMullen I*, No. 00-10151-WCH, Docket No. 179 (Bankr. D. Mass. Aug. 19, 2004).

R. Bankr. P. 2016(b) (the "Supplemental 2016(b) Statement") due to some discrepancies with respect to his retainer account.[4] Although the continued existence of the Mortgage was raised by the Debtor in *McMullen II*, due to my misunderstanding in *McMullen I* and lack of correction by Schultz, I specifically identified it as an issue not related to the fees due in this case, concluding that it must be related to fees owed to Schultz on account of the Russells' state court proceedings.

Schultz subsequently filed the Supplemental 2016(b) Statement, revealing previously undisclosed increases in his retainer paid by the Russells prior to *McMullen I* and the existence of the Mortgage securing both fees incurred in this case as well as the Russells' state court litigation. This prompted the Debtor to file a series of objections asserting, *inter alia*, that Schultz willfully concealed the Mortgage. I took the matter under advisement, and on May 27, 2009, issued *McMullen III*, finding that Schultz's disclosures in this case had been neither timely nor complete.[5] In particular, I noted Schultz's failure to clarify or correct the record after I misconstrued the Amendment in *McMullen I* resulted in that error being carried into *McMullen II,* impacting my understanding of the issues therein and unreasonably delaying a case whose completion was long overdue.[6] As an appropriate sanction, I concluded that Schultz forfeited his right to challenge the erroneous findings in *McMullen I* under the law of the case doctrine and was bound by my prior interpretation of the Amendment.[7] Accordingly, I held that "the Amendment released the Russells and left any security interest held by Schultz without an underlying obligation arising from this

---

[4] *McMullen II*, 2009 WL 530296 *30.

[5] *McMullen III*, 2009 WL 1490581 *16.

[6] *Id.*

[7] *Id.* (citing *United States v. Rivera-Martinez*, 931 F.2d 148, 151 (1st Cir.1991)).

case."[8] Nonetheless, I specifically noted that "[t]he issue of whether any such security interest secured an obligation arising outside this case was not before me and is outside my jurisdiction" and that any challenge to the validity of the Mortgage must be brought by the Russells in the appropriate state law forum.[9]

On June 8, 2009, I issued *McMullen IV*, resolving all outstanding matters with respect to Schultz's fees, reiterating that "the final judgment shall enter solely against the Debtor, rendering any security interest obtained by Schultz from the Debtor's parents ineffective to recover fees arising from this case."[10] On the same date, I entered a final order (the "Final Order") which provides in relevant part:

> 3. Schultz shall be entitled to withdraw the funds presently on deposit in his retainer account and credit it against the unpaid balance of the Final Award;
>
> * * *
>
> 5. The unpaid balance of the Final Award is solely the liability of Judith A. McMullen and any security interest obtained by Schultz from any third parties shall be ineffective to recover any part of the Final Fee Award.[11]

With the Debtor's Chapter 13 plan completed years ago, the case would have been closed but for the Debtor's appeal of the fees awarded in *McMullen II*, *McMullen III*, and *McMullen IV*. At this time, the Debtor's appeal remains pending before the United States District Court for the District of Massachusetts.

---

[8] *McMullen III*, 2009 WL 1490581 *16.

[9] *Id.* at *16 n. 84.

[10] *McMullen IV*, 2009 WL 530296 *2.

[11] Order dated June 8, 2009, Docket No. 383.

On December 23, 2009, the Moving Parties filed the present Motion for Contempt asserting that on June 12, 2009, "Schultz emptied the separate trust account held exclusively in the name of Addison Russell for fees owed to him from Judith McMullen's bankruptcy."[12]  On December 31, 2009, Schultz filed the Contempt Opposition.

### III. POSITIONS OF THE PARTIES

<u>The Moving Parties</u>

Although confusing and repetitive, the substance of the Motion for Contempt is that the state court allowed Schultz to continue his collection efforts against the Russells for fees incurred in this case based upon the unambiguous text of the Amendment and without regard to my orders in *McMullen III* and *McMullen IV*.[13]  Accordingly, the Debtor and Addison Russell request that I order Schultz to return those improperly obtained funds with interest.

<u>Schultz</u>

In contrast, Schultz asserts that I expressly authorized him to withdraw funds from the Debtor's retainer account in paragraph three of the Final Order.  As such, he contends that the Motion for Contempt is without merit and was filed to simply harass him.  Alternatively, Schultz contends that Motion for Contempt is procedurally defective because the Debtor's pending appeal to the district court has divested me of jurisdiction with respect to matters which are the subject of the appeal.  Moreover, he notes that the Motion for Contempt was not served in a manner required by Fed. R. Bankr. P. 9014 and 9020.  For these reasons Schultz asks that I deny the Motion for Contempt in all respects and to impose $500 in sanctions against the Debtor to discourage her from

---

[12] Docket No. 406 at 1.

[13] It is unclear whether my prior orders were presented to the state court.

6

filing similarly groundless motions in the future.

## IV. **DISCUSSION**

"I may, in my discretion, abstain from exercising jurisdiction over a proceeding arising in a bankruptcy case 'in the interest of justice, or in the interest of comity with State courts or respect for State law.'"[14] When contemplating whether discretionary abstention is appropriate, courts consider the following factors:

> (1) the effect of abstention on the efficient administration of the bankruptcy estate;
> (2) the extent to which state law issues predominate over bankruptcy issues;
> (3) the difficulty or unsettled nature of the applicable law;
> (4) the presence of a related proceeding commenced in state court or other non-bankruptcy court;
> (5) the basis of bankruptcy jurisdiction (if any) other than 28 U.S.C. § 1334;
> (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case;
> (7) the substance rather than the form of an asserted "core" proceeding;
> (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;
> (9) the burden of the bankruptcy court's docket;
> (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;
> (11) the existence of a right to jury trial; and
> (12) the presence in the proceeding of non-debtor parties.[15]

Because nearly all of these factors are present here, I find that abstention is warranted.

As this case quickly approaches its tenth anniversary, it is important to remember that the Debtor's plan was completed several years ago and nothing that occurs at this point, either here or in the state court, will have any impact on the administration of the estate. But for the Debtor's

---

[14] *Anderson v. Richards (In re Anderson)*, No. 07-1328, 2009 WL 4840871 *11 (Bankr. D. Mass. Dec. 10, 2009) (*quoting* 28 U.S.C. § 1334(c)(1)).

[15] *Cox v. Cox (In re Cox)*, 247 B.R. 556, 569-570 (Bankr. D. Mass. 2000) (*citing Hatcher v. Lloyd's of London*, 204 B.R. 227, 234 (M.D. Ala. 1997)); *see In re Anderson*, 2009 WL 4840871 *11.

appeal, this case would have been closed months ago. Moreover, even if the Debtor is successful on appeal, the only thing left for me to do on remand would be to execute the specific directive contained in the district court's mandate before closing the case. Put simply, the Debtor's bankruptcy case is done.

Putting aside the status of the Debtor's case, the substance of the Motion for Contempt also militates towards abstention. There is nothing unique or bankruptcy specific about the relief requested. Although the Motion for Contempt is styled as one seeking sanctions for an alleged violation of my orders, the allegations contained therein, if true, also implicate conversion and fraud upon the state court. These are all matters well within the state court's competency and jurisdiction. Indeed, the Moving Parties represented that a collection action is now pending in the state court and issues regarding the Amendment and my interpretation thereof, though originating here in the bankruptcy court, are appropriately raised in defense to such an action. Alternatively, if Schultz is correct, the Final Order is equally self evident. As I have written extensively on these issues, I am confident that a state court judge presented with my decisions would have no trouble understanding and enforcing my orders.

Jurisdiction is also a serious concern in the present case. If the retainer account referenced in paragraph three of the Final Order is the subject of the Motion for Contempt, a fact to which I cannot be sure, the Debtor's pending appeal, to the extent that it challenges all fees awarded to Schultz, divested me of jurisdiction over this matter. If not, the Motion for Contempt remains, at its base, a third party dispute between Addison Russell and Schultz. Although the Debtor joins her father in bringing the Motion for Contempt, I note that she is not an aggrieved party and not entitled to any relief. Although I do have jurisdiction over Schultz's collection efforts against the Russells

for fees incurred in the Debtor's bankruptcy case, I do not have jurisdiction over those incurred on behalf of the Russells in the state court system. This dichotomy emphasizes a recurring issue in this case, namely, that the Debtor's and the Russells' dispute with Schultz is too intertwined with state court proceedings, over which I have no jurisdiction, to offer anything beyond piecemeal relief. This is an impediment not shared by the state court and precisely the reason why I have repeatedly instructed the parties to resolve their dispute there.[16]

Lastly, I am troubled by the fact that the Motion for Contempt may be implicitly seeking reconsideration of a state court order. While the facts alleged are vague and confusing, it appears that the state court was involved in some way with the liquidation of the subject trust account.[17] Under the *Rooker-Feldman* doctrine,[18] "[f]ederal courts are precluded 'from exercising subject matter jurisdiction where the issues presented in the case are 'inextricably intertwined' with

---

[16] In the Motion for Contempt, the Moving Parties assert that "Schultz continues to play a dangerous shell game between courts," alleging that Schultz has made false representations to both this court and the state court by using the "confusing entanglement with the bankruptcy court" to his advantage. Docket No. 406 at 5. Assuming, *arguendo*, that these allegations are true, this is exactly why the dispute should be resolved by a single court with jurisdiction over all matters. In fact, consideration of the Motion for Contempt here would do nothing but further such a "shell game" because I do not have information regarding, or jurisdiction over, the entire dispute. To emphasize the full extent of the problem, due to the vagueness of the Motion for Contempt, I cannot even be sure that both the Moving Parties and Schultz are referring to the same account.

[17] The Contempt Opposition did not reference any state court action with respect to withdrawing the funds held in the retainer account.

[18] The doctrine takes its name from *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). In *Rooker*, the Supreme Court of the United States held that federal statutory jurisdiction over direct appeals from state courts lies exclusively in the Supreme Court and is beyond the original jurisdiction of federal district courts. 263 U.S. at 415-16. In *Feldman*, the Supreme Court held that this jurisdictional bar extends to particular claims that are "inextricably intertwined" with those a state court has already decided. 460 U.S. at 486-87.

questions previously adjudicated by a state court, such that the federal district court would be in the unseemly position of reviewing a state court decision for error.'"[19] Even if the *Rooker-Feldman* doctrine is not implicated, the Motion for Contempt may still constitute an inappropriate attempt to forum shop.

For all these reasons, I conclude that abstention is appropriate and the Motion for Contempt, or its substantive equivalent, is best left to the state court.

## V. CONCLUSION

In light of the foregoing, I will enter an order abstaining from deciding the Motion for Contempt.

                                                          *[signature: William C. Hillman]*

                                                          _____
                                                          William C. Hillman
                                                          United States Bankruptcy Judge

Dated: January 5, 2010

---

[19] *Heghmann v. Indorff (In re Heghmann)*, 316 B.R. 395, 403 (B.A.P. 1st Cir. 2004) (*quoting Mills v. Harmon Law Offices, P.C.*, 344 F.3d 42, 44 (1st Cir.2003)).